# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2024

Lyle W. Cayce
Clerk

_____

No. 23-20337

_____

Abraham Watkins Nichols Agosto Aziz & Stogner,

*Plaintiff—Appellee*,

*versus*

Edward Festeryga,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-4249

_____

Before Dennis, Willett, and Duncan, *Circuit Judges*.

Don Willett, *Circuit Judge*:

This is an appeal from a waiver-based remand order. Edward Festeryga, an attorney embroiled in a dispute with his former law firm, wants this case heard in federal court and contends we have appellate jurisdiction over the district court's remand order because waiver is neither an issue of subject-matter jurisdiction nor a defect in removal procedure under 28 U.S.C. § 1447(c). We agree, but our 40-plus-year-old precedent provides otherwise, holding that a waiver-based remand order is jurisdictional under

No. 23-20337

§ 1447(c) and thus unappealable under § 1447(d).[1] Abiding by our rule of orderliness, we must dismiss for lack of appellate jurisdiction.

I

The underlying dispute in this case is between the law firm Abraham Watkins Nichols Agosto Aziz & Stogner and one of its former associates, Edward Festeryga. Abraham Watkins terminated Festeryga's employment after learning that Festeryga attempted to take clients and firm files with him to a new firm. Festeryga mostly denies the allegations, but whatever their veracity, Abraham Watkins eventually sued Festeryga in Texas state court for conversion, breach of fiduciary duty, and tortious interference with contract.

The ensuing state-court proceedings spanned 17 days. After Abraham Watkins obtained a temporary restraining order prohibiting Festeryga from spoliating evidence, representing firm clients, and disclosing client information, Festeryga moved to dismiss the suit under Texas's anti-SLAPP statute, the Texas Citizens Participation Act (TCPA).[2] Festeryga's TCPA motion had the effect of staying the expedited discovery that Abraham Watkins sought,[3] but the parties were able to agree on a protective order following an off-the-record hearing. In what Festeryga describes as an effort to "deescalate" the litigation, he specifically agreed to produce certain documents within several days after signing the protective order.

The day before the documents were due, however, Festeryga filed a notice of removal in the United States District Court for the Southern

---

[1] *In re Weaver*, 610 F.2d 335 (5th Cir. 1980).

[2] Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.*

[3] *Id.* § 27.003(c) ("[O]n the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.").

No. 23-20337

District of Texas, attesting that he was a citizen of Canada and that the district court could accordingly exercise original jurisdiction over the diverse parties.[4] Abraham Watkins moved to remand, arguing that (1) Festeryga did not carry his burden in showing diversity of citizenship, and, in any event, (2) Festeryga waived his right to remove by agreeing to a protective order and filing a motion to dismiss in state court. The district court took no position on the first point but agreed on the second. Festeryga's filing of the TCPA motion to dismiss, the district court concluded, demonstrated an intent to "invok[e] the jurisdiction of the state court."[5] The district court accordingly granted Abraham Watkins's motion to remand.

Festeryga now appeals, and we must determine at the outset whether we have appellate jurisdiction. As explained below, we do not.

II

"For the most part," a unanimous Supreme Court observed a couple of months ago, "a remand order is not appealable."[6] Indeed, subject to some narrow exceptions not relevant here, 28 U.S.C. § 1447(d) provides an ostensibly categorical bar to reviewing remand orders on appeal: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."

Section 1447(d), however, has not been construed as categorically as its plain language suggests. The Supreme Court has instead read §§ 1447(c)

---

[4] *See* 28 U.S.C. § 1441(a) (providing that a defendant may remove any civil action in which "the district courts of the United States have original jurisdiction"); *see also id.* § 1332(a)(2) (providing original federal jurisdiction over civil actions in which "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of a State and citizens or subjects of a foreign state").

[5] *Johnson v. Heublein, Inc.*, 227 F.3d 236, 244 (5th Cir. 2000).

[6] *Harrow v. Dep't of Def.*, 601 U.S. 480, 487 (2024).

No. 23-20337

and 1447(d) *in pari materia* and limited the reach of § 1447(d)'s appellate bar to only those remand orders predicated on the grounds specified in 1447(c)—namely, lack of subject-matter jurisdiction or a defect in removal procedure.[7] As we put it just a few years ago, § 1447(d) "only prohibits appellate review of certain types of remand orders: the kind specified in neighboring subsection 1447(c)."[8] Thus, to the extent a district court remands a case for lack of subject-matter jurisdiction (*e.g.*, non-diverse parties) or a defect in removal procedure (*e.g.*, missing the 30-day removal deadline), we cannot review that order on appeal.[9]

Remand orders predicated on discretionary grounds *outside* § 1447(c), on the other hand, are generally reviewable on appeal.[10] The Supreme Court has held, for example, that an order remanding a case to state court under *Burford* abstention is appealable under the collateral-order doctrine.[11] The Court has held likewise for remand orders in which a district court declines to exercise supplemental jurisdiction over state-law claims.[12] We have since followed suit, adhering to the same understanding of our appellate jurisdiction despite subsequent amendments to § 1447(c).[13]

---

[7] *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976); *see also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995) ("§ 1447(d) must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d).").

[8] *Grace Ranch, LLC v. BP Am. Prod. Co.*, 989 F.3d 301, 310–11 (5th Cir. 2021).

[9] *Schexnayder v. Entergy La., Inc.*, 394 F.3d 280, 283 (5th Cir. 2004).

[10] *See id.* (listing examples of discretionary grounds for removal).

[11] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715 (1996).

[12] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 641 (2009).

[13] *See Grace Ranch*, 989 F.3d at 312–13 (rejecting the view that "defect" in § 1447(c) includes all non-jurisdictional grounds); *see also Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001) ("When a district court remands a suit relying on a

No. 23-20337

The question before us, then, is whether the district court's remand order in this case—again, which was predicated on waiver by state-court participation—is a specified ground within § 1447(c) and thus barred from our review under § 1447(d) or a discretionary ground outside § 1447(c) and thus an appealable collateral order under § 1291.

Intuition and basic legal principles suggest the latter, but we read our decision in *In re Weaver*[14] to say differently. *Weaver*, a decision that predates the Fifth Circuit's split into two separate circuits in 1981,[15] was by all appearances an ordinary business dispute involving claims of slander, fraud, breach of contract, and interference with contractual relations. The plaintiff, a Georgia corporation, filed suit in Georgia state court and successfully obtained an ex parte temporary injunction against the defendants from selling seized corporate assets. The defendants, upon hearing of the injunction, apparently "arranged a telephone conference with a different superior court judge," had the injunction vacated, and then removed the case to federal court.[16] The federal district court, in turn, remanded the case back to state court, suggesting that remand was proper because the defendants had participated in the state-court proceedings and thus waived their right to remove: "If the case was removable at all," the district court said, "it was removable prior to the appearance of the [d]efendants in the Superior Court action."[17]

---

contractual forum selection clause, that decision is not based on lack of subject matter jurisdiction and is therefore outside of the statutory prohibition on our appellate review.").

[14] 610 F.2d 335 (5th Cir. 1980).

[15] *See* Act of Oct. 14, 1980, Pub L. No. 96–452, 94 Stat. 1994.

[16] *Weaver*, 610 F.2d at 336.

[17] *Id.* at 336 n.2.

Relying on the Supreme Court's then-recent decision in *Thermtron*, the defendants petitioned for mandamus relief, seeking a writ directing the district court to reinstate the case.[18] *Weaver*, however, held that we lacked appellate jurisdiction, reasoning that the remand order was ambiguous and that "*Thermtron* was intended to be strictly limited to those cases in which a district court ha[d] *clearly* not relied upon § 1447(c) in ordering remand."[19] The district court had not done so, the court explained, nor had it "state[d] a non-section 1447(c) ground." Thus, the court concluded, "mandamus is unavailable."[20]

*Weaver* would have been an unremarkable decision but for the fact that its reasoning did not stop there. In the final two sentences of the opinion—the subject of much skepticism and our focus today—the panel seemed to also say that the district court had correctly understood that waiver affected its jurisdiction under § 1447(c) and was thus unreviewable under § 1447(d):

> Even though the specific language of § 1447(c) was not used, it seems apparent that at the time of the remand order, [the district-court judge] believed the case was not removable, leading to the logical inference that he felt jurisdiction was lacking. Such a holding is within the guidelines of § 1447(c).[21]

It would be easy to overlook, if not outright dismiss, this pair of rather vague concluding sentences. At the same time, however, we also cannot ignore their direct relevance to the issue before us now: whether waiver is a ground within the terms of § 1447(c). *Weaver* seems to say *yes*, because the district court made the "logical inference" that "jurisdiction was lacking" in light of the

---

[18] *See id.* at 336.

[19] *Id.* at 337 (emphasis added).

[20] *Id.*

[21] *Id.*

defendants' participation in state court. And lack of jurisdiction, of course, is "a holding within the guidelines of § 1447(c)."[22] We thus read *Weaver*, reluctantly, to say that a waiver-based remand order is jurisdictional under § 1447(c) and thus "immune from review under § 1447(d)."[23]

Notably, our reading of *Weaver* is not unique. The Tenth Circuit, for example, has described the decision just as we have and understandably rejected its reasoning, noting that it could "fathom no explanation" for why *Weaver* thought waiver was jurisdictional under § 1447(c).[24] The Seventh Circuit, for its part, spared no criticism of *Weaver*, calling its reasoning in this respect "unsound," "illogical," and "unpersuasive."[25] This is not to say, however, that *Weaver* has been universally rejected. A dissenting judge in the Seventh Circuit—who cited *Weaver* for the proposition that appellate courts cannot review on appeal a "district judge's order remanding a case to state court on account of waiver implied from the course of litigation"—would have followed it.[26] And the Ninth Circuit has in fact done so, citing it favorably for the same proposition but offering no independent reasoning as to why it was worth following.[27]

Thus, our reading of *Weaver* today affirms that there is indeed a 2–2 circuit split on the question whether waiver-based remand orders are reviewable on appeal. Yet this affirmance comes with reluctance. Based on our review of the parties' briefing and our sister circuits' reasoning, we are

---

[22] *Id.*

[23] *Petrarca*, 516 U.S. at 127.

[24] *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1094 (10th Cir. 2017).

[25] *Rothner v. City of Chicago*, 879 F.2d 1402, 1417 (7th Cir. 1989).

[26] *Id.* at 1419 (EASTERBROOK, J., dissenting).

[27] *See Schmitt v. Ins. Co. of N.A.*, 845 F.2d 1546, 1549, 1551 (9th Cir. 1988); *see also Kunzi v. Pan Am. World Airways, Inc.*, 833 F.2d 1291, 1294 n.7 (9th Cir. 1987).

persuaded that *Weaver* rests on erroneous premises. Waiver is a common-law creation and, as a doctrine principally concerned with a party's conduct, cannot affect our subject-matter jurisdiction.[28] Waiver also lacks other hallmarks of a jurisdictional doctrine: it need not be raised *sua sponte*,[29] it can be waived,[30] and its finding is reviewed for abuse of discretion.[31] Waiver, moreover, is a "second-order prudential device,"[32] not a doctrine compelled by Article III of the Constitution or by any statute from Congress—the only two sources of our jurisdiction.[33] We could go on, but the fact that we think *Weaver* misunderstood the niceties of waiver, jurisdiction,[34] and their relation to § 1447(c) does not give us license to decide this case according to

---

[28] *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); *see also Kontick v. Ryan*, 540 U.S. 443, 456 (2004) ("Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct[.]"); *Buchner v. F.D.I.C.*, 981 F.2d 816, 818 (5th Cir. 1993) ("[Parties] may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver.").

[29] *Soto Enters.*, 864 F.3d at 1093.

[30] *Id.*

[31] *See Adair v. Lease Partners, Inc.*, 587 F.3d 238, 240 (5th Cir. 2009) (reviewing discretionary remands for abuse of discretion).

[32] *Badaiki v. Schlumberger Holdings Corp.*, 512 F. Supp. 3d 741, 745 (S.D. Tex. 2021) (ESKRIDGE, J.).

[33] *See Sheldon v. Sill*, 49 U.S. 441, 449 (1850); *see also In re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980) ("The subject matter jurisdiction of federal courts is limited by the Constitution and Congress, and cannot be expanded by judicial interpretation or by the acts or consent of the parties to a case."); *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 298 (5th Cir. 2021) ("In determining jurisdiction, federal courts must look to the sources of their power, Article III of the United States Constitution and congressional statutory grants of jurisdiction . . . .").

[34] We suspect—but only suspect—that *Weaver* can be partly explained by the fact that it was the product of a time in which federal courts "used to apply the term 'jurisdiction' in a 'profligate' manner." *Harrow*, 601 U.S. at 489 n.1.

our own lights today. Stare decisis would be an empty Latinism if it meant that we need only follow rightly decided cases. We would do that anyway.[35]

In his commendable effort to contextualize *Weaver*, Festeryga points out that it predates both the Supreme Court's decision in *Quackenbush* and the 1996 amendment to § 1447(c). Those two historical facts are significant, of course, because our rule of orderliness does not extend to prior decisions that have been overtaken by "an intervening change in law," either through a statutory amendment or a decision by the Supreme Court.[36]

Our review of the history, however, provides no reason to ignore *Weaver* and start anew. The statutory grounds for remand were, to be sure, slightly different when both *Thermtron* and *Weaver* were decided in 1976 and 1980, respectively. At the time, § 1447(c) required remand if the case "was removed improvidently and without jurisdiction."[37] The statute was then amended in 1988 and, for the first time, distinguished between defects in removal procedure and defects in subject-matter jurisdiction.[38] District

---

[35] Whatever one may think of *Weaver* on its own terms, the decision is arguably more digestible when viewed in light of § 1447(d)'s flat prohibition of appellate review of remand orders. Multiple justices have called for the reconsideration of *Thermtron* and a return to the plain meaning of § 1447(d). *E.g.*, *Carlsbad*, 556 U.S. at 641–42 (Stevens, J., concurring); *id.* at 642–43 (Scalia, J., concurring); *id.* at 644–45 (Breyer, J., concurring). And if that happens, repudiating *Weaver* and holding that we can review waiver-based remand orders would have little to no practical significance. *Cf. Rothner*, 879 F.2d at 1419 (Easterbrook, J., dissenting) (arguing that the text of § 1447(d) supports *Weaver*). Even then, however, we could still likely review remand orders through a petition for writ of mandamus, just as we did in *Weaver* itself. *See* James Pfander, *Collateral Review of Remand Orders: Reasserting the Supervisory Role of the Supreme Court*, 159 U. Pa. L. Rev. 493, 510 (2010) (observing that the Supreme Court and federal appeals courts can review remand orders under the All Writs Act).

[36] *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018).

[37] Act of June 25, 1948, ch. 646, 62 Stat. 939.

[38] *See* Act of Nov. 19, 1988, Pub. L. No. 100–702, 102 Stat. 4642. We recognize that one relevant revision following the 1988 amendment was exchanging the term

courts could remand for the latter any time before final judgment, whereas litigants could move for remand based on the former only within thirty days of the notice of removal being filed.[39] *Quackenbush*, decided almost a decade later in 1996, held that abstention was a reviewable ground for remand outside § 1447(c) and disavowed *Thermtron* only to the extent it held that remand orders were not "final," appealable orders under § 1291.[40] That same year, several months after *Quackenbush*, Congress amended § 1447(c) once more—striking "any defect in removal procedure" and replacing it with "any defect other than lack of subject matter jurisdiction."[41] We noted this change in *Grace Ranch* but rejected the view that the amendment impliedly abrogated *Quackenbush* and immunized *all* remand orders from appellate review.[42] We instead adhered to the view, first articulated in *Quackenbush*, that discretionary remands outside § 1447(c) are reviewable on appeal.[43]

From this rather abbreviated historical account of § 1447(c) and the reviewability of remand orders, we cannot glean any intervening change in the law that would overtake the reasoning of *Weaver*. Both now and at the

---

"jurisdiction" for the more precise phrase "subject-matter jurisdiction." *Compare id.*, *with* 62 Stat. 939, § 1447(e). But we have no reason to think this slight change in language affects our analysis or how we read *Weaver*. The language change was, by all indications, stylistic and non-substantive. Before the amendment, the Supreme Court read "jurisdiction" to mean subject-matter jurisdiction, just as we do now after the 1988 amendment. *See Thermtron*, 423 U.S. at 344 n.8.

[39] *See* Act of June 25, 1948, ch. 646, 62 Stat. 939.

[40] *Quackenbush*, 517 U.S. at 715 ("To the extent *Thermtron* would require us to ignore the implications of our later holding in *Moses H. Cone* [*Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)], however, we disavow it.").

[41] Act of Oct. 1, 1996, Pub. L. No. 104–219, 110 Stat. 3022.

[42] *Grace Ranch*, 989 F.3d at 311.

[43] *Id.* at 312–13.

time *Weaver* was decided, lack of jurisdiction was an unreviewable ground for remand in § 1447(c). The distinction made by the 1988 amendment between defects in removal procedure and defects in subject-matter jurisdiction has no discernable relevance to the *Weaver* court's apparent belief that waiver was jurisdictional under § 1447(c).[44] And *Quackenbush*'s partial disavowal of *Thermtron* concerned the proper means of appellate review, not any premise that *Weaver* relied on for its understanding of § 1447(c). There is, in short, no basis for us to depart from our rule of orderliness.

## III

We are bound to follow our 1980 decision in *Weaver*, which we understand to hold that waiver-based remands are jurisdictional under § 1447(c) and thus barred from our review under § 1447(d). We accordingly DISMISS this appeal for lack of appellate jurisdiction.

---

[44] Understandably reluctant to defend *Weaver*, Abraham Watkins suggested during oral argument (and for the first time on appeal) that *Weaver* can be understood as holding that waiver is a defect in removal procedure under § 1447(c). Of the many problems with this argument, the most obvious is that "any defect in removal procedure" was not introduced into § 1447(c) until 1988, eight years after *Weaver* was decided.

STUART KYLE DUNCAN, *Circuit Judge*, concurring:

The majority convincingly lays out why our 1980 decision in *Weaver* was wrong. Op. at 8–9. Two sister circuits, spanning four decades, have also thrown shade at *Weaver*. *See City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1094 (10th Cir. 2017) (declaring "we can fathom no explanation" for why *Weaver* equated waiver-by-participation with jurisdiction); *Rothner v. City of Chicago*, 879 F.2d 1402, 1417 (7th Cir. 1989) (calling *Weaver* "unpersuasive," "odd," "illogical," and "unsound"). Yet the majority follows *Weaver* under the rule of orderliness. Op. at 9–11.

Gritting my teeth, I concur. The removal statutes have shifted over the years, *see id.* at 9–10, but not enough to erase the stubborn fact that *Weaver* transformed a remand for waiver-by-participation into a remand for lack of federal jurisdiction. That is incorrect, as two circuits (and now our panel) have confirmed. We should be able to review the waiver-based remand here under settled precedent. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12 (1996) ("[28 U.S.C.] § 1447(d) must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." (quoting *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995))). Only *Weaver* bars the way.

The proper course is for our en banc Court to unweave *Weaver*.